FINKLEY v. EUGENE SAENGER TAILORING SHOP.

[No. 15,447.   Filed June 28, 1935.]

*Jackiel W. Joseph, Nathaniel H. Maxwell,* and *Theodore R. Dann,* for appellant.

*Burke G. Slaymaker, Clarence F. Merrell, Theodore L. Locke,* and *James V. Donadio,* for appellee.

Wood, J.—Appellant, as the sole surviving dependent of John M. Finkley, filed a claim for adjustment of compensation with the Industrial Board, for his death as the result of an accident alleged to have arisen out of and in the course of his employment by appellee.

From an award of a single member of the Industrial Board denying compensation, appellant asked for a review by the full Board. Upon hearing the full Board made the following finding and award:

"And the full Industrial Board having heard the argument of counsel, having reviewed the evidence and the record herein, now finds that on July 9, 1928, one John M. Finkley, in the employ of the I. & S. Bing Company, Cincinnati, Ohio, suffered an injury as the result of an accident arising out of and in the course of his employment of which he died on the same day; that at the time of his death he was living with his wife Betty Finkley who was totally dependent upon him for support; that on May 24, 1929, the said Betty Finkley filed her application for compensation before the Industrial Commission of Ohio and on March 27, 1931, the Industrial Commission of Ohio entered an award for compensation to the said Betty Finkley in compliance with the terms of the Ohio Act; that the said Betty Finkley has been paid in full in compliance with the award made by the Industrial Commission of Ohio; that on July 7, 1930, the said Betty Finkley filed her application for the adjustment of a claim for compensation alleging that she was the widow of John M. Finkley who was killed while in the employ of the Eugene Saenger Tailoring Shop, Aurora, Indiana.

### ORDER

"It is therefore considered and ordered by the full Industrial Board of Indiana that plaintiff's application for the adjustment of claim for compensation filed on July 7, 1930, should be and the same is hereby dismissed for lack of jurisdiction."

From this award appellant appeals assigning as error for reversal, that the award of the full Industrial Board is contrary to law.

The evidentiary facts may be summarized as follows. October 1, 1925, John M. Finkley, pursuant to a contract of employment entered into, either in the state of Illinois or Ohio, commenced work for the I. & S. Bing Company, manufacturers of men's suits, with main of-

ʿfice and factory located in Cincinnati, Ohio. A factory in which trousers were made to go with coats and vests made in the Cincinnati factory was located in Aurora, Indiana, and operated under the name of Eugene Saenger Tailoring Shop, the appellee herein. Finkley worked in the Cincinnati factory from October 1, 1925, until April 1928, as assistant to the directing foreman of that factory, when the I. & S. Bing Company transferred him to the Aurora, Indiana, factory, where he acted as superintendent and had charge of all the employees in that factory. When Finkley took charge of the Aurora factory in April, 1928, it was understood that this change was only temporary until I. & S. Bing Company could get another man when Finkley would be returned to the Cincinnati factory. During the entire time covering the transactions involved herein Finkley lived in Cincinnati. His duties in Aurora required him to make daily trips to that city from his home in Cincinnati. When he was first placed in charge of the factory in Aurora, he traveled back and forth between the two cities by train. It was finally determined that an automobile would enable Finkley to render more efficient service and would be beneficial to I. & S. Bing Company, so Finkley purchased an automobile and I. & S. Bing Company paid him the sum of nine dollars per week for its use, in addition to his weekly wage of $60. Finkley was required to make daily reports to the main office and factory in Cincinnati, where he would get cloth already cut to be made into trousers, together with cloth for pockets, silk, buttons, thread, etc., which he would carry to Aurora in his automobile and on his return trip to Cincinnati he would bring back the finished trousers which he would deliver to the I. & S. Bing Company. "When the Cincinnati shop had orders that had to be delivered on the same day Mr. Finkley would make a special trip to Cincinnati in his

machine with the trousers." "He would bring pants that he had brought to his home from Aurora the night before and he would get materials to carry back to the Aurora shop, and he would just about always be carrying pants or materials. He had various duties at the Cincinnati shop and he would stop there more than half the days—60 per cent. He would get his instructions at the home office. He would get material for the Aurora shop and carry silk, thread, buttons, pocket material, etc. He would bring the payroll sheet to the Cincinnati office on Saturday afternoon. Any matters that concerned the Aurora plant would be taken up at this Saturday visit. There would be a general conference. Finkley first worked at the Cincinnati shop and his work at Aurora was for the time being. It was expected that somebody else would take his place there, and his work would then be entirely in Cincinnati."

"Often times his machine was piled high with various material, either going to the Cincinnati shop or coming from the Cincinnati shop." "In the evening before leaving he would look around to see what was needed for the work the following day. He would then go to the Cincinnati shop the next morning and bring down whatever was needed in his machine." Finkley made out the payroll for the Aurora factory. Pay checks for this payroll were prepared in the Cincinnati office of I. & S. Bing Company which checks were given by Eugene Saenger on an Aurora, Indiana, bank. Finkley was paid at the home office of I. & S. Bing Company in Cincinnati, either in cash or by check signed by that company. July 5, 1928, while travelling in his automobile on the way from Cincinnati to Aurora, Finkley met with an accident near Cleves, Ohio, which resulted in his death on July 9, 1928. Papers pertaining to the tailoring business, clothing and cloth

ready to be made into clothing were found in Finkley's automobile at the scene of the accident. May 24, 1929, appellant, as the sole surviving dependent of Finkley, filed her claim for adjustment of compensation for his death, with the Industrial Commission of Ohio. In this claim appellant alleged that she was the surviving widow of Finkley, and his only dependent; that he resided in the city of Cincinnati; that the accident which resulted in his death occurred on the highway near Cleves, Ohio; that he was superintendent of a tailoring shop and was employed by I. & S. Bing Company of Cincinnati, Ohio. March 27, 1931, the Industrial Commission of Ohio, upon hearing had upon appellant's claim made a finding of facts sustaining same and awarded her "compensation to be paid 346 weeks, plus, paid at the rate of $18.75 per week, beginning July 16, 1928, the sum of $6,500." Payments had been and were being made to appellant pursuant to said award, up to the date of the hearing of this claim by the Indiana Industrial Board.

It is now firmly established by this court, that in cases of this character there are five essential ultimate facts which must be found as a legal basis for an award of compensation. They have been stated as follows: (1) That claimant was an employee; (2) that he received an injury by accident; (3) that the accident arose out of and in the course of his employment; (4) the character and extent of the injury; and (5) claimant's everage weekly wage. *Muncie, etc., Co.* v. *Thompson* (1919), 70 Ind. App. 157, 123 N. E. 196; *Matlon* v. *Matlon* (1931), 92 Ind. App. 350, 175 N. E. 369; *Livers* v. *Graham Glass Co.* (1932), 95 Ind. App. 358, 177 N. E. 359. That the burden of establishing these five facts rests upon the surviving dependent of an alleged employee, when seeking an

adjustment of compensation for his death, follows as a necessary sequence.

In order to entitle appellant to an award of compensation it was necessary for her to prove and for the Industrial Board to find as an ultimate fact that her husband was an employee of appellee at the time that the accident occurred resulting in his death. The Industrial Board found as a fact that Finkley was an employee of the I. & S. Bing Company at the time of the accident. This was equivalent to a finding against appellant on this essential ultimate fact. *Hufford* v. *Livingston* (1922), 79 Ind. App. 519, 137 N. E. 279; *American Chain Co.* v. *Salters* (1923), 80 Ind. App. 410, 140 N. E. 435; *Pettit* v. *Continental Baking Co.* (1932), 94 Ind. App. 250, 180 N. E. 607; *Livers* v. *Graham Glass Co., supra.*

Finkley and the I. & S. Bing Company were both residents of the State of Ohio. The contract of employment between them was entered into in either Illinois or Ohio, to be performed in Ohio. There was evidence from which the Industrial Board could find that the I. & S. Bing Company had never become localized in the State of Indiana and that when Finkley assumed superintendence of the Aurora factory operated under the name of appellee, that such arrangement was only temporary, and that he was at all times performing his duties under his contract with the I. & S. Bing Company. Furthermore it is agreed that appellant filed an application with the Industrial Commission of Ohio for adjustment of compensation and that an award of compensation was made to her as a dependent of Finkley. Under such circumstances the Industrial Board was justified in finding that the compensation law of this state did not enter into and become a part of the contract of employment, and that it did not have jurisdiction over the subject matter of

this cause. *Darsch* v. *Thearle-Duffield, etc., Co.* (1922), 77 Ind. App. 357, 133 N. E. 525; *Bement Oil Corporation* v. *Cubbison* (1925), 84 Ind. App. 22, 149 N. E. 919; *Norman* v. *Hartman Furniture Co.* (1925), 84 Ind. App. 173, 150 N. E. 416; *Bishop* v. *International Sugar Feed Co.* (1928), 87 Ind. App. 509, 162 N. E. 71; *Smith* v. *Menzies Shoe Co.* (1933), 98 Ind. App. 132, 188 N. E. 592.

It is so well settled by the decisions of this court, that the finding of the Industrial Board on controverted questions of fact is binding on this court and that it will not weigh the evidence; that if the Industrial Board reaches a legitimate conclusion on the evidential facts such conclusion must not be disturbed by this court even though it might prefer another conclusion equally legitimate, and that on appeal from a decision of the Industrial Board, the court will look only to the evidence most favorable to the finding for the purpose of determining the sufficiency of the evidence to sustain the same; that the citation of authorities is unnecessary. An examination of the evidentiary facts heretofore set out somewhat in detail, with these controlling principles of law as our guide leads to but one conclusion, namely; that the evidence was sufficient to sustain the finding of facts and that they are sufficient to sustain the award of the full Industrial Board.

Other questions are presented, but the conclusion which we have reached makes it unnecessary for us to pass upon them in this appeal.

Finding no error the award of the full Industrial Board is affirmed.